IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZOLTAN KOZIC, | ) | CASE NO.  4:20-cv-275 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SARA LIOI |
| vs. | ) | |
| | ) | |
| WARDEN JAMES HAVILAND, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Respondent. | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the

Petition of Zoltan Kozic ("Kozic" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28

U.S.C. § 2254 (Doc. No. 1), the Answer/Return of Writ (Doc. No. 13), Kozic's Traverse (Doc. No. 19),

and Respondent's Reply (Doc. No. 21).  Kozic is in custody at the Grafton Correctional Institution

pursuant to journal entry of sentence in the case *State v. Kozic*, Mahoning County Court of Common

Pleas, Case No. 2010-CR-506.  For the following reasons, the undersigned recommends that the Petition

be DISMISSED in part and DENIED in part.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a

state court, factual determinations made by state courts are presumed correct unless rebutted by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th

Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The Ohio Court of Appeals for the

Seventh Appellate District summarized the facts underlying Kozic's conviction as follows:

*Main Market Road*

{¶ 2} This case stems from a rash of burglaries that occurred in Columbiana, Mahoning,
Trumbull, and Geauga Counties in late 2009 and early 2010. On November 24, 2009, Chris Natali
returned from work to his home at 16663 Main Market Road in Parkman, Geauga County, Ohio,

1

to find a knife collection box he kept near the fireplace had been thrown to the ground. Upstairs, he found dresser drawers pulled out and a coin collection and other items missing, including a credit card. Natali notified police and later was notified by the credit card issuer that the card was being used fraudulently. One of those fraudulent transactions occurred at a gas station. Video surveillance footage taken from the gas station when the card was used fraudulently showed Jennifer Kozic exiting a green Cadillac and a red Jeep was nearby which appellant's codefendant, Jamie Kozic, was known to drive.

*Mystic Rock Road*

{¶ 3} On December 27, 2009, Jareth Gaudio and his wife left their home at 13831 Mystic Rock Road in Columbiana, Mahoning County, Ohio, to take one of their sons to the airport. They returned home to find their front door kicked in and medication, money, a television, and jewelry missing. Police responded and a canine unit picked up a scent that led to the nearby home of Orazio Merlo. A few weeks later Merlo found a cellular phone near her mailbox and turned it over to police. Through the phone's cellular service provider, the police determined that the phone belonged to appellant's wife, Heather Kozic who resided at 238 Wilson Street, Struthers, Ohio 44471.

*McCoy Avenue*

{¶ 4} On January 22, 2010, Cathy Applegate was returning from work to her home located next to an apartment building on McCoy Avenue in East Liverpool, Ohio. A driver sitting in a parked car nearby caught her attention as strange. She then observed two white males going from the front of an apartment building to the back. When she got home, she told her husband, Lawrence Applegate III, about what she had observed. She then headed back out with her daughter to take her to a school function. She observed double sliding glass doors open and the curtains blowing and told her husband to call the police. Lawrence observed two people coming from the back of the apartment building put something they had been carrying into the trunk of a car parked nearby. He called the police after the car sped away.

{¶ 5} Brandy Ramirez, who lives across the street from the apartment building, observed two males coming from the back of the apartment building. She made eye contact with one of them before he drove away. She later identified appellant from a photo array as being that person.

{¶ 6} Susan Williams returned to her home at the apartment building on McCoy Avenue to find the back sliding glass door to her kitchen open. She found money lying on her patio, pill bottles thrown, and her bedroom a mess. Three televisions, $300, and jewelry were missing from her apartment. A latent fingerprint taken from the scene matched the right index finger of appellant's codefendant, Jamie Zoltan.

*New England Square*

{¶ 7} On January 25, 2010, Ronald Sines returned from work to his home at 46014 New England Square in New Waterford, Columbiana County, Ohio. He noticed things out of place and thrown about and that the back sliding glass door had been pried open. A digital music player, $37.40 in change, and five rings were missing. Police processing the scene noticed that his neighbor's back door was also open.

2

{¶ 8} Mark Liber returned to his home at 46022 New England Square in New Waterford, Columbiana County, Ohio to find police investigating a burglary next door at his neighbor's home. Liber discovered his back door open and that his own home too had been burglarized. Missing were a computer, two televisions, purses, a camera, and some jewelry.

### South Pointe

{¶ 9} Rebecca Ashbridge lives at a condominium, Unit 55–D, located in a condominium development known as South Pointe, at 9191 North Lima Road, in Poland Township, Mahoning County, Ohio. On January 30, 2010, she returned home to find the front door unlocked. Inside, the home had been ransacked and a television, gaming system, and various jewelry pieces were missing.

### Shepherd of the Valley

{¶ 10} At a retirement community known as Shepherd of the Valley, William Wade lives in a condominium, Unit 306, located at 9111 Sharrott Road, Poland, in Beaver Township, Ohio. On February 3, 2010, he returned home to find the back door open. A handgun, cash, and watch were missing. Police took casts of pry marks left around the back door and submitted them to BCI for analysis.

### Stone Gate

{¶ 11} On February 6, 2010, a condominium, Unit 202, located in the Stone Gate housing development at 9264 Sharrott Road was found broken into by Doug Dilullo. Dillulo was a construction manager for the development for which this unit was the model unit. It was fully furnished with utilities turned on and Dillulo checked on it once a week. He found that the front door jamb was broke and that the unit had been broken into, although there was nothing taken.

### Ivy Hills

{¶ 12} On February 14, 2010, James Fedor discovered that his mother's condo had been broken into. A side patio door was open and there were pry marks on a rear patio door which was also open. The condo was located at 8550 Ivy Hills, Unit 20 in Boardman, Ohio. The bedroom had been ransacked and a television and jewelry were missing. The condo had been vacant since December 26, 2009, when his mother had passed away.

### West Park Avenue

{¶ 13} On February 5, 2010, Michael Naughton, who lived in a triplex condominium at 840 West Park Avenue in Hubbard, Trumbull County, Ohio, heard a loud noise coming from his attached garage. When he went to check on the noise, he observed that a door to the garage had been pried and knocked partially off the door jamb. He then called the police.

{¶ 14} Meanwhile, a letter carrier for the United State Postal Service and a bypassing motorist observed an individual in that area acting suspiciously. A description of the individual was broadcast to other police officers and, subsequently, Hubbard Officer Gerald Smith encountered appellant's codefendant, Jamie Kozic, nearby and arrested him following a positive identification by the letter carrier and the motorist. A screwdriver was recovered from Jamie Kozic's red Jeep Cherokee.

{¶ 15} Following the rash of burglaries, law enforcement had conducted numerous controlled buys of oxycodone from appellant, Zoltan Kozic, and Jennifer Kozic.

{¶ 16} On May 20, 2010, a Mahoning County grand jury issued a twenty-two count indictment alleging a criminal enterprise among appellant, Zoltan Kozic, and Jennifer Kozic. Of those twenty-two counts, appellant was indicted on nine counts: six counts of burglary in violation of R.C. 2911.12(A)(2)(C) (second-degree felonies); two counts of drug trafficking in violation of R.C. 2925.03(A)(1)(C)(1)(c) (third-degree felonies); and one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1)(B) (first-degree felony).

{¶ 17} On August 1, 2011, the day set for trial and before the trial commenced, each of the defendants made renewed motions for severance of the trial as to defendants and as to counts in the indictment. Prior to trial, each of the defendants had filed formal written motions for severance which the trial court had earlier denied. This time, the trial court again denied the motions as to appellant and Jamie Kozic, but granted Jennifer Kozic's motion to sever her case for trial based on a perceived *Bruton* issue. (Trial Tr., Vol. I, 74–83.) Apparently, the state wanted to call a witness who was in the jail with Jennifer Kozic and heard her talking about her involvement in the crimes alleged in the indictment, including her brother's Jamie Kozic's and appellant's roles in those crimes.

{¶ 18} In *Bruton v. United States*, 391 U.S. 123, 137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), Bruton was convicted of armed postal robbery after a joint trial with his co-defendant, Evans. At trial, a witness testified that Evans confessed to him that Evans and Bruton committed the robbery. Evans did not testify. The trial court instructed the jury that they were only to consider Evans' confession against Evans and were not permitted to consider it against Bruton. The Supreme Court reversed Bruton's conviction holding that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Bruton*, 391 U.S. at 125.

{¶ 19} Jennifer Kozic later pleaded guilty to each of the counts she was charged with in the indictment with the engaging in a pattern of corrupt activity count amended from a first-degree felony to second-degree felony. She was sentenced to community control sanctions, later violated those community control sanctions by testing positive for illegal drugs and was sentenced to four years in prison.

{¶ 20} Appellant's and codefendant Jamie Kozic's trial proceeded before a jury. The state presented testimony from fifty-four witnesses and had sixty-seven exhibits admitted into evidence. The state's principal witness was Barry Stewart who, with the exception of the Main Market Road burglary in Geauga County and the West Park Avenue burglary in Trumbull County, had committed each of the burglaries with appellant and/or codefendant Jamie Kozic, including all of the Columbiana and Mahoning County burglaries. He testified in detail how they committed each of those burglaries and where they sold the stolen items afterwards.

{¶ 21} Following presentation of the state's case, the trial court granted appellant's Crim.R. 29

motion to dismiss count 1, stemming from the burglary on Main Market Road in Geauga County. (Trial Tr., Vol. IX, 2020–2022.) On August 15, 2011, the jury found appellant guilty of all of the remaining counts for which he was indicted: five counts of burglary (counts 3, 5, 6, 7, and 8), two counts of drug trafficking (counts 14 and 15), and one count of engaging in a pattern of corrupt activity (count 22). The trial court sentenced him to an aggregate term of imprisonment of eighteen years.

*State v. Kozic*, 2014-Ohio-3788, 2014 WL 4291627, at *1-4 (Oh. Ct. App. Aug. 27, 2014).

## II. Procedural Background

### A. Trial Court Proceedings

On May 20, 2010, the Mahoning County Grand Jury issued an indictment charging Kozic and two others. Kozic was charged with six counts of burglary (R.C. §2911.12(A)(2)(C)) (counts 1, 3, 5-8); two counts of trafficking in drugs (R.C. §2925.03(A)(1)(C)(1)(c)) (counts 14-15); and one count of engaging in a pattern of corrupt activity (R.C. §2923.32(A)(1)(B)) with a felony enhancement (count 22). Doc. No. 13-1 (Exhibit 1). Kozic, through counsel, entered a plea of not guilty. Doc. No. 13-1 (Exhibit 2).

Kozic's jury trial was scheduled for July 6, 2010. Doc. No. 13-1 (Exhibit 3). On July 1, 2010, the state, counsel for Kozic, and counsel for the other two defendants agreed to a new trial date of February 7, 2011, and that speedy-trial time was tolled until then. Doc. No. 13-1 (Exhibit 4). At a pre-trial hearing on January 18, 2011, Kozic's co-defendant, Jennifer Kozic, motioned for the trial to be continued with no objections from the other parties and the trial court reset trial for February 28, 2011. Doc. No. 13-1 (Exhibit 5).

On February 22, 2011, Kozic appeared in court for a status conference. Due to breakdowns in attorney/client relationships, the trial court appointed new counsel for Kozic and one of his co-defendants. Doc. No. 13-1 (Exhibit 6). Following a hearing on March 4, the trial court postponed the trial to August 1, 2011, upon agreement of the parties. Doc. No. 13-1 (Exhibit 7).

On June 16, 2011, Kozic filed a motion to dismiss the charges due to a violation of his speedy trial right and a motion for relief from prejudicial joinder, requesting severance from both of his co-

defendants and as to counts of the joint indictment.  Doc. No. 13-1 (Exhibits 8, 9).  Following a hearing, the court denied Kozic's motion for relief from joinder of defendants and counts and deferred ruling on his motion to dismiss based on speedy trial violations until the state filed a response.  Doc. No. 13-1 (Exhibit 11).  The state filed a response, which included a speedy trial calculation.  Doc. No. 13- 1 (Exhibit 12).  Kozic filed a renewed motion for relief from prejudicial joiner for severance of codefendants and as to counts of the indictment.  Doc. No. 13-1 (Exhibit 13).  Prior to the start of trial, the court overruled Kozic's motion to dismiss based on speedy trial violations and his renewed motion for severance.  Doc. No. 13-3, pp. 518-519 (Tr. Vol. 1).

The case proceeded to trial and the jury found Kozic guilty of burglary on counts 3, 5-8; guilty of trafficking in drugs on counts 14-15; and guilty of engaging in a pattern of corrupt activity with a felony enhancement as charged in count 22.  Count 1 was dismissed by the court pursuant to a Crim.R. 29 motion.  Doc. No. 13-1 (Exhibits 14-15).  In an entry filed on September 2, 2011, the trial court sentenced Kozic to a total of 18 years in prison.  Doc. No. 13-1 (Exhibit 16).  Kozic's sentence was amended in a *nunc pro tunc* entry to specify the method by which Kozic was convicted (jury trial) and the degree of felony in count 22 (first degree).  Doc. No. 13-1 (Exhibit 17).

## B.  Direct Appeal

On September 16, 2011, Kozic, through new counsel, appealed to Seventh District Court of Appeals, Mahoning County, Ohio.  Doc. No. 13-1 (Exhibits 18, 19).  In his brief, Kozic raised the following assignments of error:

1. Zoltan Kozic was deprived of his right to effective assistance of counsel. Sixth and Fourteenth Amendments, United States Constitution; Section 16, Article I, Ohio Constitution.

2. The trial court erred and violated Zoltan Kozic's rights to due process and a fair trial when, in the absence of sufficient evidence and against the manifest weight of the evidence, it convicted him of trafficking in drugs under R.C. 2925.03(A)(1) and (C)(1)(c). Fifth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article 1, Ohio Constitution; R.C. 2925.01(D)(1)(d).

6

3. The trial court erred and violated Zoltan Kozic's rights to due process and a fair trial when, in the absence of sufficient evidence and against the manifest weight of the evidence, it convicted him of engaging in a pattern of corrupt activity under R.C. 2923.32. Fifth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article 1, Ohio Constitution.

4. The trial court violated Zoltan Kozic's due process rights and abused its discretion, when it failed to sever Mr. Kozic's trial from that of his codefendant. Fifth and Fourteenth Amendments, United States Constitution; Section 10, Article 1, Ohio Constitution.

5. The trial court violated Zoltan Kozic's speedy-trial rights and abused its discretion, thereby committing reversible error, when it failed to grant Mr. Kozic's motion to dismiss. Sixth Amendment, United States Constitution, and Section 10, Article 1, Ohio Constitution; R.C. 2945.71; R.C. 2945.72; R.C. 2945.73.

Doc. No. 13-1 (Exhibit 19).  The state filed a response and Kozic replied.  Doc. No. 13-1 (Exhibits 20, 21).  On August 27, 2014, the Ohio Court of Appeals found in favor of Kozic on his second assignment of error, reversed the trial court's judgment in part, and remanded the case back to the trial court to enter convictions on counts 14 and 15 of the lesser offenses of fourth-degree felonies of drug trafficking.  The court overruled the remaining assignments of error and affirmed those convictions.  Doc. No. 13-1 (Exhibit 22, Case No. 2011 MA 00160); *State v. Kozic*, 2014-Ohio-3788, 2014 WL 4291627.

On September 26, 2014, Kozic, *pro se*, filed a notice of appeal in the Ohio Supreme Court.  Doc. No. 13-1 (Exhibit 23).  In his memorandum in support of jurisdiction, he raised the following propositions of law:

1. My attorney provided me with ineffective assistance of counsel when he knew from day one I wanted to go to trial. I wanted a fast and speed trial because I knew the state could not build a case and have a trial in that amount of time. After prosecutor entered a paper stating time was being tolled, due to Crim. Rule 11 negotiations being unsuccessful on the day my trial was suppose to start, I told my attorney I did not agree. The state can't force me into a plea deal. After 280 days, one for one, a week before my trial was starting, my attorney and I meet and I demand he file a motion to dismiss for fast and speedy trial violation. He asks the court to recuse himself from my case that day. The judge denied his request and states that the trial is scheduled for following week. I was escorted back to the jail, then immediately brought back to court where judge allowed counsel to withdraw from case. At every appearance, I stated on record, I was ready for trial, never wanted a time tolling for the state to build a case on my codefendant and his multiple charges. This is why my attorney was ineffective as his as his assistance in counsel. He failed to file motions when I asked him to and then took himself off my case days

7

before trial. [sic]

2. The court failed when it would not separate me from my co-defendant and allowed the joinder to stand. The court allowed the joinder to be separated from a third co-defendant. The court separated he because it knew the only evidence was a confidential informant saying I was involve. The state had so much evidence on my co-defendant and knew that that was all the evidence it had that would clearly be used to find us guilty if kept together and took advantage of it. State had eyewitness, fingerprints, bootmarks, cell crimes. By sitting next to him with the overwhelming evidence, I was tried and convicted on his charges and should have only been on trial for what the confidential informant said I did. The jury thought I was guilty too. I should have been granted a new trial by appeals court when the read the evidence. [sic]

3. The court failed to dismiss my charges after violating my fast and speedy trial rights when I sat in custody for 280 days. Day for day. One for one count. The court failed to bring me to trial in a timely fashion. The Supreme Court ruled that time can not be tolled for motions filed. In Re DS; 136 Ohio St. 3d. 303, 2013-Ohio-3687, 995 N.E. 2d 209. The court of appeals opinion, cited in the reply brief [w]ith a footnote that case was pending in Supreme Court of Ohio. This supplemental authority is Supreme Court's decision dismissing the case as inprovidently accepted. I was arrested April 10, 2010 on single count of drug charge that would be in my indictment when secret indictment came down on May 22, 2010. I went for probation violation stemming from new above mentioned indictment, on May 23, 2010. I told my attorney I had to take care of probation violation so I could force the state to bring me to trial in speedy time. I took 120 day deal for violation which took me to August 10, 2010. On August 11, 2010 my clock would begin for my count on new felony charges. State started tolling my time July 1, 2010 until February 7, 2011, which can't be lawful. From August 11, 2010 till three months later, no motions were filed or even heard. That in itself violates my 90 days, 3 for 1 fast and speedy trial. For these reasons, my charge and charges should have been immediately dismissed. [sic]

4. The trial court erred when it found me guilty and sentenced me to prison for Engaging In A Pattern Of Corrupt Activity. Me and my co-defendant, my brother, never violated this statue. We both got an informant saying we got him pills form separate people just so we could get one for ourselves for completing the transaction-exchange. We were using pills at that time to get high from the effects of them. We were addicts and so was my third codefendant, my sister and my brothers wife. We all have same last names but that does not mean the state can abuse it's authority under color of law and say we were organized, organized a crime or even planned to do things together. These were sporatic events where a couple were alleged done together. This does not constitute a criminal empire. [sic]

Doc. No. 13-1, pp. 302-303 (Exhibit 24).  On February 18, 2015 the Ohio Supreme Court declined to

accept jurisdiction pursuant to S.Ct. Prac. Rule 7.08(B)(4).  Doc. No. 6-1, p. 339 (Exhibit 26).

## C.  2015 Resentencing

Pursuant to the appellate court's remand, the trial court resentenced Kozic on November 16, 2015,

to an aggregate sentence of 18 years in prison. Doc. No. 13-1 (Exhibit 27).

On December 3, 2015 Kozic, *pro se*, appealed to the Ohio Court of Appeals. Doc. No. 13-1 (Exhibit 28). In his brief, he raised the following assignments of error:

> 1. When the trial court re-sentenced the appellant counts 3, 5, 6, 7, 8, and 22 at his Re-sentenced Hearing, it was contrary to law, in violation of R.C. 2953.08(4), Due Process under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

> 2. When the trial court failed to make findings in connection with imposing a consecutive sentence pursuant to [sic] Under R.C. 2929.14(C)(4), it was contrary to law, thereby violating procedural Due Process as guaranteed under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

Doc. No. 13-1 (Exhibit 29). The state responded and Kozic replied. Doc. No. 13-1 (Exhibits 30, 31). On December 29, 2016, the Ohio Court of Appeals found in favor of Kozic in part and remanded the case back to the trial court for a resentencing hearing limited to the proper advisement and imposition of post-release control. Doc. No. 13-1 (Exhibit 32, Case No 2015 MA 00215); *State v. Kozic*, 2016-Ohio-8556, 2016 WL 7493601.

On February 2, 2017, Kozic, *pro se*, appealed to the Ohio Supreme Court. Doc. No. 13-1 (Exhibit 33). In his memorandum in support of jurisdiction, he raised the following propositions of law:

> 1. When the trial court re-sentenced the appellant counts 3, 5, 6, 7, 8, and 22 at his re-sentencing hearing, it was contrary to law, in violation of R.C. 2953.08(4), Due Process under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

> 2. When the trial court failed to make findings in connection with imposing a consecutive sentence pursuant to R.C. 2929.14(C)(4), it was contrary to law, thereby violating procedural Due Process as guaranteed under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

Doc. No. 13-1 (Exhibit 34). On June 21, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. No. 13-2 (Exhibit 47).

**D. Post-Conviction Petition**

Meanwhile, on January 11, 2016, Kozic, *pro se*, filed a petition to vacate or set aside judgment of

9

conviction or sentence in the trial court and raised the following claims:

> 1. The Petitioner was denied due process and a right to a fair trial, when he was tried before an impartial tribunal as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 and 16 of the Ohio Constitution.

> 2. The Petitioner's conviction was procured violation of his Fourth Amendment right, when the State attached a GPS tracking device to his vehicle, without a court ordered search warrant. [sic]

> 3. The trial court lacked subject-matter-jurisdiction to hear the Petitioner's case, violating due process under the Fourt[]eenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

> 4. The petitioner's conviction violates due process and a fair trial, because of the unconstitutional in-court identification procedure at trial. Thereby, depriving him of the rights secured under Article I, Section 10 and 16 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution.

Doc. No. 13-1 (Exhibit 35).  The state moved to dismiss the petition as untimely.  Doc. No. 13-1 (Exhibit 36).  On August 10, 2016, the trial court granted the state's motion and dismissed Kozic's post-conviction petition as untimely.  Doc. No. 13-1 (Exhibit 37).

On October 4, 2016, Kozic, *pro se*, appealed to the Ohio Court of Appeals.  Doc. No. 13-1 (Exhibit 38).  On October 28, 2016, the appellate court dismissed the appeal *sua sponte* as untimely filed.  Doc. No. 13-1 (Exhibit 39, Case No. 2016 MA 00151).  Kozic did not appeal.

**E.  Crim.R. 33 Motion for Leave to File Delayed Motion for New Trial**

On August 26, 2016, Kozic, *pro se*, filed a motion for leave to filed delayed motion for new trial pursuant to Crim.R. 33, citing newly discovered evidence in the form of a confession by his co-defendant brother who claimed that Kozic was not involved.  Doc. No. 13-1 (Exhibit 40).  On September 26, 2016, the trial court overruled Kozic's motion.  Doc. No. 13-1 (Exhibit 41).

On October 20, 2016, Kozic, *pro se*, appealed to the Ohio Court of Appeals.  Doc. No. 13-2 (Exhibit 42).  In his brief, he raised the following assignment of error:

> The procedure by which the trial court employed in dismissing the Appellant's Motion for Leave to File Delayed Motion for New Trial, pursuant to Crim. R. 33 (A)(6), was a abuse of discretion,

thereby, violating Due Process, and Article I, Section 16 of the Ohio Constitution. [sic]

Doc. No. 13-2 (Exhibit 43). The state responded and Kozic filed a reply. Doc. No. 13-2 (Exhibits 44,

45). On June 12, 2017, the appellate court found that Kozic's motion was untimely and, in the

alternative, rejected the merits of his appeal and affirmed the trial court's judgment. Doc. No. 13-2

(Exhibit 48, Case No. 2016 MA 00158).

On July 3, 2017, Kozic, *pro se,* appealed to the Ohio Supreme Court. Doc. No. 13-2 (Exhibit 49).

In his memorandum in support of jurisdiction, he raised the following proposition of law:

> The trial court properly denied defendants motion for leave to file a motion for new trial without a
> hearing, because he failed to show by clear and convincing evidence that he was unavoidably
> prevented from discovering new, credible evidence. [sic]

Doc. No. 13-2 (Exhibit 50). On November 1, 2017, the Ohio Supreme Court declined to accept

jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. No. 13-2 (Exhibit 51).

## F. 2017 Resentencing

On May 8, 2017, the trial court re-sentenced Kozic pursuant to the appellate court's limited

remand order. Doc. No. 13-2 (Exhibit 52).

On June 7, 2017, Kozic, through new counsel, appealed to the Ohio Court of Appeals. Doc. No.

13-2 (Exhibits 53, 54). In his brief, he raised the following assignments of error:

> 1. The Trial Court violated the Appellant's right to Due Process under the Fourteenth Amendment
> of the United States Constitution and Article I Section 16 of the Ohio Constitution and is contrary
> to law.

> 2. The Trial Court violated Appellant's right to due process when Judge Sweeny presided at the
> resentencing hearing, as a result the U.S. Constitution and Ohio Constitution require resentencing.

Doc. No. 13-2 (Exhibit 54). On February 27, 2018, the appellate court found in Kozic's favor in part and

reversed the trial court's judgment as to the matter of post release control and remanded for resentencing

only for the trial court to issue the proper post release advisement. Doc. No. 13-2 (Exhibit 56, Case No.

2017 MA 00100); *State v. Kozic*, 2018-Ohio-816, 2018 WL 1169660.

11

Kozic did not appeal.

**G.  2017 Federal Habeas Petition**

Meanwhile, on February 16, 2017, Kozic, *pro se*, filed his first federal habeas petition challenging his 2011 convictions.  Doc. No. 13-2 (Exhibit 57; Case No. 4:17cv322).  He asserted the following grounds for relief:

1.  The petitioner was deprived of his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments, United States Constitution.

2.  The trial court erred and violated his rights to due process and a fair trial when, in the absence of sufficient evidence by convicting him of trafficking in drugs under [Ohio] R.C. 2925.03(A)(1) and (C)(1)(c), violating his [rights under the] Fifth and Fourteenth Amendments, United States Constitution.

3.  The trial court erred and violated his rights to due process and a fair trial when, in the absence of sufficient evidence by convicting him of engaging in a pattern of corrupt activity under [Ohio] R.C. 2923.32. This violated the Fifth and Fourteenth Amendments, United States Constitution.

4.  The trial court violated his due process right when it failed to severe his trial from that of his co-defendant. This violated the Fifth and Fourteenth Amendments, United States Constitution.

5.  The trial court violated his right to a speedy trial when it failed to grant his motion to dismiss in violation of the Sixth Amendment to the United States Constitution.

6.  The petitioner was denied due process and a right to a fair trial, when he was tried before an impartial tribunal as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.

7.  The petitioner's conviction was procured in violation of his Fourth Amendment [rights], when the State attached a GPS tracking device to his vehicle without a Court ordered search warrant.

8.  The trial court lacked subject matter jurisdiction to hear the petitioner's case, in violation of the due process under the Fourteenth Amendment to the United States Constitution.

9.  The conviction in my case violates due process and the right to a fair trial, under the Sixth and Fourteenth Amendments to the United States Constitution, because of the unconstitutional procedure used at trial in my case.

Doc. No. 13-2 (Exhibit 57).  The Warden filed a motion to dismiss, asserting that Kozic's petition was a mixed petition because he had not yet been resentenced and, thus, his conviction was not final.  Doc. No.

13-2 (Exhibit 58).  On September 20, 2017, the magistrate judge issued a report and recommendation recommending that the petition be dismissed, and on January 3, 2018, the district court adopted the report and recommendation and dismissed the case, over Kozic's objections.  Doc. No. 13-2 (Exhibit 60, 61).

## H.  Motion for New Trial

On January 11, 2018, Kozic, *pro se*, filed a motion for new trial.  Doc. No. 13-2 (Exhibit 63).  On July 3, 2018, the trial court denied the motion.  Doc. No. 13-2 (Exhibit 64).

On August 1, 2018, Kozic, *pro se*, appealed to the Ohio Court of Appeals.  Doc. No. 13-2 (Exhibit 65).  In his brief, he raised two assignments of error:

1. The trial court abused its discretion when it denied the appellant's criminal rule 33 motion for new trial based upon hearsay evidence.

2. The trial court violated defendant-appellant's confrontation clause when they allowed hearsay testimony an unauthorized witness. [sic]

Doc. No. 13-2 (Exhibit 66).  On May 17, 2019, the appellate court affirmed the trial court's judgment.

Doc. No. 13-2 (Exhibit 68, Case No. 2018 MA 0079).

On June 27, 2019, Kozic, *pro se*, appealed to the Ohio Supreme Court.  Doc. No. 13-2 (Exhibit 69).  In his memorandum in support of jurisdiction, he set forth the following propositions of law:

1. The Appellate Court Abused Its Discretion When It Affirmed The Decision Of The Trial Courts Denial of Appellants Motion For New Trial Pursuant To Criminal Rule 33 Based On Hearsay Evidence.

2. The Trial Court Violated Appellant Kozic's Confrontation Rights Afforded By The Sixth Amendment Of The United States Constitution When They Allowed Hearsay Testimony By An Unauthorized Witness.

Doc. No. 13-2 (Exhibit 70).  On August 20, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. No. 13-2 (Exhibit 72).

## I.  Petition to Vacate or Set Aside Judgment

Meanwhile, on January 16, 2018, Kozic, *pro se*, filed a petition to vacate or set aside judgment of

conviction or sentence.  Doc. No. 13-2 (Exhibit 73).  He raised the following claims:

> 1. The Petitioner was denied due process and a right to a fair trial, when he was tried before an impartial tribunal as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 and 16 of the Ohio Constitution.

> 2. The Petitioner's conviction was procured violation of his Fourth Amendment right, when the State attached a GPS tracking device to his vehicle, without a court ordered search warrant.

> 3. The trial court lacked subject-matter-jurisdiction to hear the Petitioner's case, violating due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

Doc. No. 13-2 (Exhibit 73).  On July 3, 2018, the trial court dismissed the motion because it was

untimely.  Doc. No. 13-2 (Exhibit 74).

On August 1, 2018, Kozic, *pro se*, appealed to the Ohio Court of Appeals.  Doc. No. 13-2

(Exhibit 75).  In his brief, he raised the following assignments of error:

> 1. The Appellant was denied due process and a right to a fair trial, when he was tried before an impartial tribunal as guaranteed by the Sixth and Fourteenth Amendment of the United States Constitution and Article I, Section 16 of the Ohio Constitution.

> 2. The appellant's conviction was procured in violation of his Fourth and Fourteenth Amendment right, when the State attached a GPS tracking device to his vehicle, without a court ordered search warrant. [sic]

> 3. The trial court lacked jurisdiction to hear the appellant's case, thereby, violating due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

> 4. The appellant's conviction violates due process and a fair trial, because of the unconstitutional in-court identification procedure at his trial, thereby, depriving him the rights secured under Article I, Section 10 and 16 of the Ohio Constitution and Fourteenth Amendment to the United States Constitution.

Doc. No. 13-2 (Exhibit 76).  On April 29, 2019, the appellate court affirmed the trial court's judgment.

Doc. No. 13-2 (Exhibit 78, Case No. 18 MA 0083).  On October 3, 2019, Kozic filed a request with the

Ohio Court of Appeals to vacate its April 29, 2019 judgment, alleging that he had not received it and

missed his chance to appeal to the Ohio Supreme Court.  Doc. No. 13-2 (Exhibit 79).  On November 4,

2019, the Court of Appeals granted his request to vacate its prior order but again affirmed the trial court's

judgment that his petition was untimely.  Doc. No. 13-2 (Exhibit 80).

On December 18, 2019, Kozic, *pro se*, appealed to the Ohio Supreme Court.  Doc. No. 13-2

(Exhibit 81).  In his memorandum in support of jurisdiction, he set forth the following proposition of law:

> The Appellate Court abused its discretion when it affirmed the trial courts denial of Kozic's
> Petition for post-Conviction relief thereby disregarding the law of the case and further denying
> him of his right to Due Process and equal Protection provided by the fourteenth of the United
> States Constitution.

Doc. No. 13-2 (Exhibit 82). On March 3, 2020, the Ohio Supreme Court declined to accept jurisdiction of

the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. No. 13-2 (Exhibit 83).

## J.  August 24, 2018 Resentencing

In a judgment entry filed on August 24, 2018, the trial court re-sentenced Kozic pursuant to the

appellate court's remand order.  Doc. No. 13-2 (Exhibit 85).  Kozic did not file an appeal.

## K.  2020 Federal Habeas Petition

On January 29, 2020, Kozic, *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to §

2254.[1]  Doc. No. 1.  He raised the following grounds for relief:

> **GROUND ONE:** The petitioner was deprived of his right to the effective assistance of counsel as
> guaranteed by the Sixth and Fourteenth Amendments, United States Constitution.
>
> **Supporting Facts**: The petitioner's trial counsel was ineffective for inviting the admission
> of testimonial statements that violated the Sixth Amendment's Confrontation Clause. His counsel
> elicited from Detective Eric Datillo on cross-examination that a confidential informant, Dino
> Barbato, implicated him in the rash of burglaries. His counsel also invited and failed to object to
> the admission of unduly prejudicial, hearsay testimony of bad acts by Matthew Nicholson, the
> confidential informant who helped police conduct the controlled buys, and Barry Stewart, who
> participated in the burglaries. Additionally, his trial counsel was ineffective for failing to request
> an instruction for the jury to disregard the evidence that had been presented in support of count 1
> (burglary). His counsel was ineffective for not filing a motion to dismissed based on a right to a
> speedy trial violation.
>
> **GROUND TWO:** The trial court erred and violated his rights to due process and a fair trial

---

[1] January 29, 2020 is deemed the filing date because that is the date Kozic delivered his Petition to the prison authorities for
mailing.  Doc. No, 1, p. 16; *Houston v. Lack*, 487 U.S. 266, 275 (1988).

15

when, in the absence of sufficient evidence by convicting him of trafficking in drugs under R.C. 2925.03(A)(1) and (C)(1)(c), violating his Fifth and Fourteenth Amendments, United States Constitution.

**Supporting Facts**: The state failed to present adequate evidence to establish the applicability of the penalty enhancement provision. The verdict was entered upon insufficient evidence.

**GROUND THREE:** The trial court erred and violated his rights to due process when, in the absence of sufficient evidence by convicting him of engaging in a pattern of corrupt activity under R.C. 2923.32. This violated the Fifth and Fourteenth Amendments, United States Constitution.

**Supporting Facts**: There was insufficient evidence to support a conviction of enterprise and insufficient evidence presented at trial to establish the existence of an enterprise. The State failed to demonstrate that there was an ongoing organization, formal or informal, that operated as a continuing unit and had an organizational structure separate and apart from the pattern of corrupt activity.

**GROUND FOUR:** The trial court violated his due process right when it failed to sever his trial from that of his co-defendant. This violated the Fifth and Fourteenth Amendments, United States Constitution.

**Supporting Facts**:  The trial court violated due process in denying severance of the offenses and his trial from that of his co-defendant, Jamie Kozic. The jury's verdicts did not demonstrate that they were able to consider the evidence independently as it pertained to him or his co-defendant's charge.

**GROUND FIVE**: The trial court violated his right to a speedy-trial when it failed to grant his motion to dismiss in violation of the Sixth Amendment to the United States Constitution.

**Supporting Facts**: The petitioner was indicted on May 20, 2010. The speedy trial clock started to run on the day following his arrest. His speedy-trial clock should have not tolled for 104 days before he filed for Discovery and Bill of Particulars on May 27, 2010 nor on July 1, 2010. He did not agree to a continuance or the motions filed. The State claims that he filed some motions which could be construed as serving as additional basis to toll the speedy-trial clock, but in Ohio the Court would not consider any motion filed by any person that has counsel, because this would be hybrid representation. Therefore, even if he has filed the motions an [sic] the State claims, this would not toll his speedy trial clock. The Court also appointed appellant new counsel which necessitated further delay in his case. At a March 4, 2011 status conference, he did not agree[] to a continuance of the trial until August 1, 2011, the date on which the trial started. The petitioner's speedy trial clock should have not tolled from July 1, 2010 until August 1, 2011.

**GROUND SIX**: The petitioner was denied due process and a right to a fair trial when he was tried before an impartial tribunal as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.

**Supporting Facts**: The trial Court re-set his bail from $50,000 to $300,000 without cause or justification. Because the trial court arbitrary modified his bail, he could not prepare for his trial, nor correspond effectively with his counsel. The Judge in his case was not neutral. The court failed to have a speedy trial hearing and would not separate him to be tried from his co-defendant and later failed recusing himself without reason. The trial court, therefore, lacked jurisdiction of his case due to this violation.

**GROUND SEVEN:** The petitioner's conviction was procured in violation of his Fourth Amendment, when the State attached a GPS tracking device to his vehicle without a Court ordered search warrant.

**GROUND EIGHT**: The trial court lacked subject matter jurisdiction to hear the petitioner's case, in violation of due process under the Fourteenth Amendment to the United States Constitution.

**Supporting Facts**: The Mahoning County Court of Common Pleas indicted and convicted the petitioner of multiple crimes. The alleged crimes occurred in Columbiana County, Ohio. This is not within the jurisdiction/territory of the Mahoning County Court of Common Pleas. Counts 3,5,6, and 7 which he was found guilty by the jury, happened in Columbiana County, Ohio. The trial court exceeded its statutory there [sic] by violating due process under the Fourteenth Amendment.

**GROUND NINE**: The conviction in my case violated due process and the right to a fair trial, under the Sixth and Fourteenth Amendment's to the United States Constitution, because of the unconstitutional in-court identification procedure used at trial in my case.

**Supporting Facts**: At trial the prosecutor used a suggestive identification procedure to the State's witness Brandy Ramirez. There was a great possibility the I [sic] was misidentified. My counsel failed to inspect the pre-identification instructions that was given to Ramirez. The procedure was so impermissibly suggestive, as to give rise, to a very likelihood of a mistaken identity. The circumstances used at trial to identify me was unduly prejudicial and infringed upon my right to due process.

Doc. No. 1 pp. 5-14. Respondent filed an Answer (Doc. No. 13), Kozic filed a Traverse (Doc. No. 19), and Respondent filed a reply (Doc. No. 21).

### III. Legal Standard

**A. Exhaustion and Procedural Default**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr*., 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of

limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id*. (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id*.

**Exhaustion**.  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g., Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural default**.  Procedural default may occur in two ways. *Williams*, 460 F.3d at 806.

First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

19

**B. Merits Review**

In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state

20

courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## IV. Analysis

### A. Kozic's Petition is not time-barred

Respondent argues that Kozic's Petition is barred by the statute of limitations and that he is not entitled to tolling principles to excuse the time bar. Doc. No. 13, pp. 20-29. AEDPA provides a one-year limitations period in a habeas action brought by a person in custody pursuant to the judgment of a state court. Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

21

28 U.S.C. § 2244(d)(1).

**1. Kozic's conviction became final on September 24, 2018**

Respondent argues that Kozic's conviction was final under § 2244(d)(1)(A) when the appeal of

his May 2017 resentencing was decided on February 27, 2018.  Doc. No. 13, p. 22.  But Kozic prevailed,

in part, on that appeal and he was resentenced (a third time) on August 24, 2018.  Respondent submits

that Kozic's August 2018 resentencing shouldn't count to restart the limitations period and explains:

> When the trial court engages in a full resentencing, the resulting sentence is a new judgment
> which restarts the AEDPA statute of limitations.  *King v. Morgan*, 807 F.3d 154, 156 (6th Cir.
> 2015).  However, this holding was limited by *Crangle v. Kelly*, which held, "[a] new, worse-than-
> before sentence…amounts to a new judgment."  838 F.3d 673, 678 (6th Cir. 2016).  Kozic's case
> was remanded back to the trial court on February 27, 2018.  Kozic's sentencing entry contained
> the proper post-release control period, however, at the hearing Kozic was told he would be subject
> to three years of post-release control, instead of five. (Ex. 56, Pg. 3).  Previously, Kozic's case
> was remanded because the trial court had not advised him of the correct consequences of violating
> post-release control. (Ex. 56, Pg. 3).  However, at his very first sentencing hearing, Kozic was
> advised on the record he would be subject to a mandatory period of post-release control for five
> years. (Sent. Trans. Ex. 106, Pg. 23-24).  From the beginning of his sentencing journey, Kozic
> was aware of the required five years of mandatory post-release control.

Doc. No. 13, p. 22.  Respondent's argument is not persuasive.  The fact that Kozic had been told, in

2011, that he would be subject to a 5-year post-release control period does not cure the trial court's

statement to Kozic at his May 2017 resentencing that he would be subject to a 3-year post release control

period.  Thus, Kozic's August 2018 resentencing of a 5-year post release control period constitutes a

"new, worse-than before sentence [that] amounts to a new judgment."  *Crangle v. Kelly*, 838 F.3d 673,

678, 680 (6th Cir. 2016) (finding that the state trial court's later, *nunc pro tunc* entry correcting the

court's erroneous statements made at the resentencing hearing regarding post-release control restarts the

AEDPA statute of limitations period).

Thus, the undersigned finds that Kozic's August 24, 2018 resentencing is the operative date for

calculating the statute of limitations.  Because Kozic did not appeal, his conviction became final 30 days

later, on September 24, 2018.  *See* Ohio R. App. P. 4(A) (setting forth a 30-day time period for direct

appeal).  The limitations period started running the next day, so, absent tolling, the one-year limitations period expired on September 25, 2019.

### 2. Kozic is not entitled to statutory tolling

Respondent argues that, even if Kozic's August 24, 2018 resentencing restarts the limitations period, his petition is time-barred because the statute of limitation expired on September 25, 2019, and his petition—filed January 29, 2020—is still too late and he is not entitled to statutory tolling.  Doc. No. 13, p. 23.  Respondent submits that, although Kozic had filed a motion for a new trial and a post-conviction petition that were pending when he was resentenced in August 2018, both items were not "properly filed" and, therefore, they do not toll the limitations period.  Doc. No. 13, pp. 23-25.  The undersigned agrees.

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts.  *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (citing 28 U.S.C. § 2244(d)(2)).  The statutory tolling provision, however, does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (citation omitted).  "An application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, *e.g.*, requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery."  *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000)).  For instance, a post-conviction petition deemed untimely pursuant to Ohio law is not "properly filed" and, therefore, does not toll the statute of limitations.  *Id*. at 771-772; *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (a petition is not "properly filed" when the state courts

23

reject it as untimely pursuant to state law).

Here, Kozic's January 11, 2018 motion for new trial was rejected by the trial court without explanation, and the Ohio Court of Appeals affirmed in the last reasoned decision by the state courts. The court commented that Kozic's motion was untimely because he did not file it within 120 days as required by Ohio Crim.R. 33(B); that he had not shown that he was unavoidably prevented from discovering the evidence that served as the basis for his motion to overcome the time-bar in Rule 33(B); and that his motion was barred by *res judicata* because he had raised the same issues in two prior appeals, including in a motion for leave to file a delayed motion for new trial, which the Ohio Court of Appeals had also found untimely under Rule 33(B). Doc. No. 13-2, pp. 300-303; *Kozic*, 2019-Ohio-1924, ¶ 7 (citing *Kozic*, 2017-Ohio-4391, ¶ 8-12). Thus, the undersigned finds that Kozic's motion for new trial was not "properly filed" because the Ohio Court of Appeals determined that it was untimely. *See Davis v. Bradshaw*, 900 F.3d 315, 324 (6th Cir. 2018) (an untimely motion for new trial pursuant to Ohio Crim. R. 33(B) is not "properly filed" and does not toll the limitations period, citing *Anderson v. Warden*, 2010 WL 1387504, at *3 (N.D. Ohio Mar. 9, 2010)).

Kozic's January 2018 post-conviction petition also does not toll the limitations period. The trial court rejected Kozic's petition as untimely (Doc. No. 13-2, p. 336) and the Ohio Court of Appeals, in the last reasoned decision by the state courts, affirmed, agreeing that Kozic's petition was untimely (Doc. No. 13-2, pp. 368-372; Doc. No. 13-2, pp. 400-402). The undersigned finds that Kozic's January 2018 post-conviction petition was not "properly filed" and does not toll the limitations period. *See Pace*, 544 U.S. at 417.

Thus, the undersigned finds that Kozic is not entitled to statutory tolling of the limitations period. Indeed, Kozic concedes that his petition is time-barred and requests that the Court consider his petition under principles of equitable tolling. Doc. No. 19, p. 6.

24

### 3. Kozic is entitled to equitable tolling

Kozic argues that he is entitled to equitable tolling.  A petitioner is entitled to equitable tolling when he has been pursuing his rights diligently and some extraordinary circumstance prevented him from timely filing his habeas petition.  *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace*, 544 U.S. at 418); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011).  "Absent compelling equitable considerations, a court should not extend limitations by even a single day."  *Vroman*, 346 F.3d at 604 (quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)).  There are five factors relevant to determining whether equitable tolling is appropriate: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the filing requirement.  *Id*. at 604-605.

Kozic submits that he lacked actual and constructive notice of the one-year limitations period and his "remaining ignorant of the legal requirement for filing his claim was reasonable."  Doc. No. 19, p. 6. The undersigned disagrees that Kozic was unaware of the one-year limitations period; he was advised of the one-year limitations period by this Court when it dismissed his 2017 federal habeas petition for failing to exhaust his administrative remedies.  Doc. No. 13-2, pp. 226-228.  However, as Kozic points out, this Court had also determined that the statute of limitations had not begun to run at that time (September 2017) in part because Kozic had an appeal pending "following the trial court's denial of his motion for new trial" and that "further state court appellate review of these matters remains a possibility." Doc. No. 13-2, p. 227, n.6; Doc. No. 13-2, pp. 239-240.  Kozic's ignorance of a filing requirement—that a state court's denial of a motion for new trial rejected as untimely is not "properly filed" and cannot toll the limitations period—was reasonable.  It was reasonable for Kozic to believe that he had to wait until any motions for a new trial had been exhausted before filing his current habeas petition, even if they had

25

been rejected as untimely, because the Court's prior order had suggested that possibility.  And because his motion for new trial had been pending from January 2018 until August 20, 2019, the limitations period did not start running until August 20, 2019, and Kozic's petition, filed January 29, 2020, was within the one-year limitations period.

Thus, the undersigned finds that Kozic is entitled to equitable tolling and his petition is not time-barred.  Accordingly, the undersigned considers the grounds raised in Kozic's petition.

## B.  Ground 1 is procedurally defaulted and a portion also fails on the merits

In Ground 1, Kozic argues that trial counsel was ineffective for the following reasons: (1) inviting testimonial statements at trial that violated the Confrontation Clause; (2) eliciting testimony on cross-examination about a confidential informant; (3) inviting and failing to object to the admission of "hearsay testimony of bad acts" of the confidential informant and an individual who participated in the burglaries; (4) failing to request an instruction for the jury to disregard the evidence that had been presented in support of count one (burglary); and (5) not filing a motion to dismiss based on a speedy trial violation. Doc. No. 1, p. 5.  Respondent argues that Ground 1 is procedurally defaulted.  Doc. No. 13, pp. 31-33.

### 1. Ground 1, subparts 1-4, are procedurally defaulted

On direct appeal to the Ohio Court of Appeals, Kozic alleged that trial counsel was ineffective for the reasons set forth in subparts (1)-(4) listed above (Doc. No. 13-1, pp. 87-96), but he did not raise those issues in his appeal to the Ohio Supreme Court (Doc. No. 13-1, p. 302).  Thus, he has procedurally defaulted those issues. *Williams*, 460 F.3d at 806 (issues not raised on direct appeal to the Ohio Supreme Court are procedurally defaulted).

### 2. Ground 1, subpart 5, is procedurally defaulted and fails on the merits

In subpart (5) listed above, Kozic argues that trial counsel was ineffective for failing to file a motion to dismiss based on a speedy trial violation.  But Kozic did not raise that issue as a reason trial

26

counsel was ineffective in his brief to the Ohio Court of Appeals. Rather, he argued that counsel was ineffective for agreeing to a continuance. Doc. No. 13-1, pp. 96-97. Although Kozic raised this claim in his brief on direct appeal to the Ohio Supreme Court (Doc. No. 13-1, p. 302), doing so did not "fairly present" this claim. *See Castille v. Peoples*, 489 U.S. 346, 349-351 (1989) (raising a claim for the first time to the highest state court on discretionary review is not "fair presentation" for exhausting a federal habeas claim); *Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").

Moreover, Kozic's claim fails on the merits because trial counsel did file a motion to dismiss based on a speedy trial violation. Doc. No. 13-1, p. 24; Doc. No. 13-3, pp. 414-416. Although it appears that Kozic alleges that his first counsel did not file a motion to dismiss for a speedy trial violation, his second counsel did. Thus, the issue of whether Kozic's speedy trial rights had been violated had been raised by trial counsel to the trial court. The undersigned finds that Kozic's claim that trial counsel was ineffective for not filing a motion to dismiss based on a speedy trial violation fails on the merits.

### 3. Kozic does not show cause, prejudice, or actual innocence to excuse the procedural default

Kozic does not allege cause or prejudice to excuse his procedural default. He has not shown that he suffered a fundamental miscarriage of justice, *i.e.*, that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Kozic has not presented such evidence. Although he complains that there was insufficient evidence to support some of his convictions, "[a]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623

27

(1998).

In sum, the undersigned finds that Ground 1 is procedurally defaulted; in addition, a subsection of Ground 1 fails on the merits; and Kozic has not shown cause, prejudice, or actual innocence to excuse his procedural default.

## C.  Ground 2 is moot

In Ground 2, Kozic argues that there was insufficient evidence to convict him of drug trafficking under R.C. 2925.03(A)(1) and (C)(1)(c).  Doc. No. 1, p. 6.  He raised this claim on direct appeal, arguing that the state did not prove the bulk amount of drugs involved.  Doc. No. 13-1, pp. 98-99.  The Ohio Court of Appeals agreed.  It explained that the bulk amount of drugs found to be involved at trial enhanced Kozic's conviction to a third degree felony (a violation of R.C. 2925.03(C)(1)(c)), but that the state did not prove that Kozic trafficked that amount.  Doc. No. 13-1, pp. 276-281; *Kozic*, 2014 WL 4291627, at *7-10.  Accordingly, the Ohio Court of Appeals reversed his drug trafficking convictions (counts 14 and 15) under R.C. 2925.03(C)(1)(c) and remanded for the trial court to enter convictions on the lesser included offense of fourth degree felony drug trafficking (a violation of R.C. 2925.03(C)(1)(a)) and to resentence Kozic on those convictions.  *Id*. at *10.  Thus, the undersigned finds that Kozic's claim that there was insufficient evidence to convict him on two counts of drug trafficking of the third degree pursuant to R.C. 2925.03(C)(1)(c) is moot.[2]

## D.  Ground 3 fails on the merits

In Ground 3, Kozic argues that there was insufficient evidence to convict him of engaging in a pattern of corrupt activity under R.C. 2923.32.  Doc. No. 1, p. 7.  In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

---

[2] Kozic did not present a claim to the state courts that, in general, his drug trafficking convictions were unsupported by sufficient evidence.  Thus, to the extent Ground 2 could be read to assert such a claim, it is procedurally defaulted.

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

(1979) (emphasis in original).  Under this standard, deference is due the trier of fact's determination.

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made

the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or

acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, in making a determination as to sufficiency

of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or

substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*,

319 F.3d 780, 788 (6th Cir. 2003); *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018).

"Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the

evidence to exclude every reasonable hypothesis except that of guilt."  *Johnson v. Coyle*, 200 F.3d 987,

992 (6th Cir. 2000) (cleaned up); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007)

("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies.  *Brown*, 567 F.3d at 205;

*Coleman v. Johnson*, 566 U.S. 650 (2012).  Accordingly, even if this Court were to conclude that a

rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must

still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."

*Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir.

2009).

Here, the Ohio Court of Appeals set forth the sufficiency of the evidence standard:

{¶ 35} Sufficiency of the evidence is the legal standard applied to determine whether the case
may go to the jury or whether the evidence is legally sufficient as a matter of law to support the
jury verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 6680 (1997). In essence,
sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541
(1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id*. In
reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in
a light most favorable to the prosecution, any rational trier of fact could have found the essential
elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113, 684 N.E.2d

29

668.

{¶ 36} Alternatively, a weight-of-the-evidence challenge requires an appellate court to review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In weighing the evidence and the reasonable inferences that can be drawn therefrom, if there exists two fairly reasonable views of the evidence, the reviewing court cannot simply substitute its judgment for the jury and choose the one it finds more persuasive or believable. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). In assessing the credibility of the witnesses, the reviewing court is guided by the principle that the credibility of the witnesses is primarily the responsibility and province of the jury. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). This is because the jury is in the best position to assess the credibility of a trial witness based on their observations of the witnesses' demeanor, gestures, and voice inflections. *Gore*, 131 Ohio App.3d at 201, 722 N.E.2d 125, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). In reviewing all of the evidence, a weight-of-the-evidence challenge requires the reviewing court to determine if the greater amount of credible evidence supported the jury's finding of guilt. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 37} Reversal based on a successful weight-of-evidence challenge is reserved only for the exceptional case in which the evidence weighed so heavily against conviction that the jury clearly must have lost its way, creating a manifest miscarriage of justice. *Id*. Indeed, reversing on weight of the evidence after a jury trial is so extreme that it requires the unanimous vote of all three appellate judges rather than a mere majority vote. *Thompkins*, 78 Ohio St.3d at 389, 678 N.E.2d 541, citing Section 3(B)(3), Article IV of the Ohio Constitution (noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

*Kozic*, 2014 WL 4291627, at *6-7. The appellate court then considered Kozic's claim:

{¶ 55} This assignment of error involves the Ohio's Corrupt Activity Act, R.C. 2923.31 *et seq.*, patterned after the federal RICO Act. Appellant and his codefendants were charged with engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1). R.C. 2923.32(A)(1) provides: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *."

{¶ 56} Appellant argues that there was insufficient evidence of an "enterprise" in this case. Appellant claims there was never sufficient evidence presented at trial to establish the existence of an enterprise because it was not demonstrated that there was an ongoing organization, formal or informal, that operated as a continuing unit and had an organizational structure separate and apart from the pattern of corrupt activity. Appellant's argument implicitly urges us to adopt the requirements for finding an enterprise as they have developed under the federal RICO statute, citing *United States v. Riccobene*, 709 F.2d 214 (3rd Cir.1983), and *United States v. Bledsoe*, 674 F.2d 647 (8th Cir.1982), when analyzing Ohio's engaging in a pattern of corrupt activity statute.

{¶ 57} *Riccobene* identified three elements that must be proven for finding that an enterprise

30

exists: (1) an ongoing organization, (2) with associates that function as a continuing unit, (3) that has a structure separate and apart, or distinct, from the racketeering activity. *Riccobene* at 222–223. *See also Bledsoe* at 664 (holding "enterprise" element requires proof of a structure separate from the racketeering activity).

{¶ 58} Ohio's Corrupt Activity Act defines enterprise as follows:

> "Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons *associated in fact* although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.

(Emphasis added.) R.C. 2923.31(C).

{¶ 59} Both *Riccobene* and *Bledsoe* relied on *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), in which the United States Supreme Court explained enterprise as "an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct" that is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."

{¶ 60} In Ohio, the Tenth District adopted the *Riccobene* test in *State v. Teasley*, 10th Dist. Nos. 00AP–1322, 00AP1323, 2002 WL 977278 (May 14, 2002). This Court has yet been required to define enterprise for purposes of Ohio's engaging in a pattern of corrupt activity statute.

{¶ 61} However, in 2009, it is important to note that the United States Supreme Court decided *Boyle v. United States*, 556 U.S. 938, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009). The *Boyle* decision effectively eliminated the third factor set forth in *Riccobene*. The Third Circuit, which had decided *Riccobene*, acknowledged in *United State v. Bergrin*, 650 F.3d 257 (3rd Cir.2011), that *Riccobene* had been overruled by the United States Supreme Court's decision in *Boyle*.

{¶ 62} In *Boyle*, the Court added that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle* at 939. The Court effectively rejected the third factor of the *Riccobene* test and also listed a number of structural elements that the government need not prove to establish an "enterprise":

> We see no basis in the language of RICO for the structural requirements that petitioner asks us to recognize. As we said in *Turkette*, an association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence

31

long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

*Boyle*, 556 U.S. at 948, 129 S.Ct. 2237, 173 L.Ed.2d 1265.

{¶ 63} Given that the definition provided by the Court in *Boyle* is more in agreement with Ohio's version of the federal RICO statute and effectively eliminates the third factor set forth in *Riccobene*, we decline to incorporate that factor into Ohio's definition of enterprise. Additionally, other Ohio appellate court districts which have had occasion to address the matter have adopted the definition provided by the Court in *Boyle*. *State v. Dodson*, 12th Dist. No. CA2010–08–191, 2011–Ohio–6222; *State v. Perry*, 11th Dist. No.2011–L–125, 2012–Ohio–4888.

{¶ 64} Applying the test outlined in *Boyle*, there was sufficient evidence presented to support the existence of an enterprise. There was testimony that appellant and his codefendant, Jamie Kozic, participated in numerous burglaries together. They rode together in the same vehicle to different homes. They broke into the homes together. They removed items from the home together and took them back to the same vehicles. They each later sold the items at the same pawn shop. And the burglaries occurred over the span of months from late 2009 to early 2010.

{¶ 65} In sum, the evidence presented five instances of the enterprise (appellant and his codefendant, Jamie Kozic) engaging in distinct criminal acts (burglary) over a period of several months. Appellant was directly involved in every incident of that corrupt activity.

{¶ 66} Accordingly, appellant's third assignment of error is without merit.

*Kozic*, 2014 WL 4291627, at *11-13.

Kozic argues that the evidence against him was weak, the testimony of Stewart, the state witness who provided the pivotal evidence against Kozic, was "suspect," and that improper evidence bolstered Stewart's credibility in the eyes of the jury.  Doc. No. 19, pp. 10-11.  But this Court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury.  *Brown*, 567 F.3d at 205.  Moreover, Kozic did not raise those arguments on appeal to the Ohio Court of Appeals. Rather, Kozic presented a legal argument regarding what constitutes an "enterprise."  Doc. No. 13-1, pp. 100-104.  Thus, his argument challenging Stewart's testimony is also procedurally defaulted.

Next, Kozic argues that there was "only corroborative evidence on one count" of burglary and not

more, as the Ohio Court of Appeals found.  Doc. No. 19, p. 12.  But he does not identify what counts of burglary he believes there was insufficient evidence to support.  Thus, he has not shown that the Ohio Court of Appeals' finding was unreasonable.[3]  Moreover, he did not raise that argument to the Ohio Court of Appeals.  Indeed, he asserted, in his brief, "Certainly there was adequate proof of a pattern of corrupt activity" and argued only that that evidence did not establish an "enterprise" under Ohio law.  Doc. No. 13-1, p. 102; Doc. No. 19, p. 14.  Thus, he procedurally his argument that there was insufficient evidence to support more than one burglary conviction.

Finally, Kozic reiterates the arguments he made to the Ohio Court of Appeals and disagrees with that court's interpretation of the Ohio RICO statute.  Doc. No. 19, pp. 12-16.  But the United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citations omitted).  In sum, the undersigned finds that Kozic has not shown that the Ohio Court of Appeals' factual findings are incorrect; that it applied the wrong sufficiency standard of review to his claim, or that its decision is an unreasonable application of Supreme Court precedent.  Accordingly, the undersigned finds that Ground 3 fails on the merits.

## E.  Ground 4 fails on the merits

In Ground 4, Kozic argues that the trial court violated his due process rights when it failed to sever his trial from his co-defendant's trial.  Doc. No. 1, p. 8.  The Ohio Court of Appeals considered this claim:

> {¶ 68} An appellate court will only reverse a trial court's denial of severance if the trial court abused its discretion. *State v. Skatzes*, 104 Ohio St.3d 195, 2004–Ohio6391, 819 N.E.2d 215, ¶ 33.

> {¶ 69} If it appears that a defendant is prejudiced by the joinder of offenses or defendants, the

---

[3] Stewart testified that Kozic participated in four burglaries in two counties, Doc. No. 13-3, pp. 2083-2087 (Mystic Rock); 2099-2101 (New England Square, two sites); 2102-2107 (South Pointe), and one burglary in a third county in which Kozic brought the items back to the first county to sell them, Doc. No. 13-3, pp. 2094-2099 (St. Clair).

trial court may grant a severance. Crim.R. 14. But the burden is on the defendant to prove prejudice and to prove that the trial court abused its discretion in denying severance. *State v. Brinkley*, 105 Ohio St.3d 231, 2005–Ohio–1507, 824 N.E2d 959, ¶ 29.

{¶ 70} "[J]oinder of defendants is proper so long as all defendants participated in the same series of transactions leading to the charges even though not all defendants participated in every act. * * * Not all defendants need be charged in each count * * * nor would differing levels of culpability among defendants necessarily justify severance." *State v. Bundy*, 7th Dist. No. 02 CA 211, 2005–Ohio–3310, ¶ 53, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 88–89, 564 N.E.2d 54 (1990).

{¶ 71} "Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons. Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980). "The test is 'whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way—by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever. * * *.'" *Schiebel* at 89, 564 N.E.2d 54, quoting *United States v. Castro*, 887 F.2d 988, 996 (9th Cir.1989).

{¶ 72} The trial court did not abuse its discretion when it denied appellant's motion for severance of defendants. Six of the nine burglary counts involved both appellant and his codefendant Jamie Kozic. But, as *Schiebel* states, not all defendants need be charged with each count to join defendants for trial. *Id.* at 89, 564 N.E.2d 54. Since each of the counts in the indictment arose from the same series of transactions, the trial court did not abuse its discretion when it allowed a joint trial.

{¶ 73} Furthermore, the trial court instructed the jurors that they should consider the evidence against each of the defendants separately. And when discussing the law concerning each offense, it specified the defendants charged with those offenses. The jury is presumed to have followed the trial court's limiting instructions. *State v. Raglin*, 83 Ohio St.3d 253, 264, 699 N.E.2d 482 (1998). Also, appellant has not attempted to argue that he would have defended his case differently if the other defendants had not been joined. *See State v. Johnson*, 88 Ohio St.3d 95, 110, 723 N.E.2d 1054 (2000); *State v. Franklin*, 62 Ohio St.3d 118, 123, 580 N.E.2d 1 (1991); *State v. Stephens*, 4th Dist. No. 98CA41, 1999 WL 1285879 (Dec. 23, 1999).

*Kozic*, 2014 WL 4291627, at *13-14.

Joint trials are favored for defendants who are indicted together because they promote efficiency and avoid the potential for inconsistent verdicts. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *Rodriguez-Baron v. Hall*, 2010 WL 3260073, at *7 (N.D. Ohio July 27, 2010)).[4] "Improper joinder does

---

[4] Report and recommendation adopted, 2010 WL 3260071 (N.D. Ohio Aug. 18, 2010).

not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id*. (quoting *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986)).

Here, the Ohio Court of Appeals applied the proper standard to Kozic's joinder claim when it asked whether he was prejudiced by the trial court's failure to sever his case from his co-defendant's cased and found that he was not. Kozic disagrees with the appellate court's finding and submits, "The jury's verdicts did not demonstrate that they were able to consider the evidence independently as it pertained to him or his co-defendant's charge." Doc. No. 1, p. 8; Doc. No. 19, p. 12. But, as the Ohio Court of Appeals explained, "The jury's verdicts demonstrate that they were able to consider the evidence independently as it pertained to each individual charge and did not lump the charges together." 2014 WL 4291627, at *15. The testimony of Stewart was unequivocal regarding which burglaries Kozic participated in and which burglaries he did not participate in and what stolen items Kozic sold and what items his co-defendant sold. See, *e.g.*, Doc. No. 13-3, pp. 2083-2107. A witness testified that he purchased stolen items from Kozic. Doc. No. 13-3, pp. 1963-1964. A witness identified Kozic leaving the scene of the McCoy burglary, of which he was convicted. Doc. No. 13-3, p. 1452; *Kozic*, 2014 WL 4291627, at *1. Thus, Kozic's assertion that the testimony was "overlapping and convoluted and could have been easily misapplied" to him, rather than his co-defendant, is belied by the record.

The undersigned finds that Kozic has not shown that the Ohio Court of Appeals' factual findings are incorrect; that it applied the wrong standard of review to his claim, or that its decision is an unreasonable application of Supreme Court precedent. Accordingly, the undersigned finds that Ground 4 fails on the merits.

**F. Ground 5 is not cognizable and fails on the merits**

In Ground 5, Kozic argues that the trial court violated his speedy trial rights when it denied his

motion to dismiss based on an alleged speedy trial violation.  Doc. No. 1, p. 9.  But he raised his speedy trial claim in state court as a violation of the Ohio speedy trial statute.  Doc. No. 13-1, pp. 106-113. Thus, it was presented as a state law violation and is not cognizable upon federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *Bennett v. Warden, Lebanon Corr. Inst.*, 782 F.Supp.2d 466, 478-479 (S.D. Ohio 2011) (claim that the trial court violated the Ohio speedy trial statute is not cognizable because it had not been presented to the state courts as a federal law violation) (collecting cases).

Assuming, *arguendo*, that Kozic's claim did allege a federal law violation, it fails on the merits. The Sixth Amendment to the United States Constitution guarantees a defendant a "speedy and public trial."  U.S. Const. Amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972).  In *Barker*, the Supreme Court refused to establish a set number of days constituting a violation of the speedy trial right.  *Id.* at 523.  Instead, the Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of the delay between the date of indictment or arrest (whichever is earlier) and the date of trial.  *Id.* at 530; *United States v. Marion*, 404 U.S. 307, 320 (1971).  The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.  *Barker*, 407 U.S. at 530; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992).

Ohio courts evaluate the state speedy trial provisions found in R.C. § 2945.71 *et seq.*, which are considered coextensive with the Sixth Amendment speedy trial requirement.  *Brown v. Bobby*, 656 F.3d 325, 330 (6th Cir. 2011) (citing *State v. O'Brien*, 516 N.E.2d 218, 220 (Ohio 1987) and *State v. Pachay*, 416 N.E.2d 589, 591 (Ohio 1980)).  R.C. § 2945.71 provides that a person shall be brought to trial within

36

270 days after arrest, and that, for purposes of computing time, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."  R.C. § 2945.71(C)(2) & (E).  Section 2945.72 lists instances in which the time limit for bringing an accused to trial may be tolled, including "The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."  R.C. § 2945.72(H).  "[A]ny time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*."  *Brown*, 656 F.3d at 331.

Because AEDPA deference applies to a state appellate court's speedy trial analysis on federal habeas review, a court:

> need not go into too great of depth in considering [the *Barker*] factors, but instead should simply ascertain whether the state court's decision constituted an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). A decision can "unreasonably apply" federal law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S.Ct. 1495. This court is not concerned with whether the state court ruled erroneously or incorrectly, but rather with whether the state court decision was "objectively unreasonable." *See Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004); *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004).

*Brown*, 656 F.3d at 332-333.

The Ohio Court of Appeals considered Kozic's speedy trial claim as follows:

{¶ 83} Ohio recognizes both a constitutional and a statutory right to a speedy trial. *State v. King*, 70 Ohio St.3d 158, 161, 637 N.E.2d 903 (1994); *see also* Sixth Amendment, United States Constitution; Section 10, Article I, Ohio Constitution. The Sixth Amendment of the U.S. Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." The General Assembly has embodied this fundamental right in the provisions of R.C. 2945.71 to 2945.73. R.C. 2945.71; R.C. 2945.72; R.C. 2945.73. Thus, the Ohio Supreme Court has found the statutory speedy-trial provisions set forth in R.C. 2945.71 to be coextensive with constitutional speedy-trial provisions. *State v. O'Brien*, 34 Ohio St.3d 7, 9, 516 N.E.2d 218 (1987).

{¶ 84} R.C. 2945.71 provides the timeframe for a defendant's right to a speedy trial based on the level of offense. As indicated earlier, appellant was ultimately indicted on seventeen felony counts. According to the Ohio Revised Code, "a person against whom a charge of felony is pending shall be brought to trial within two hundred seventy days after his arrest." R.C. 2945.71(C)(2). However, each day the defendant spends in jail solely on the pending criminal charge counts as three days. R.C. 2945.71(E).

{¶ 85} R.C. 2945.72 lists a number of tolling events that may extend the period of time in which the prosecution must bring a defendant to trial. R.C. 2945.72(A)-(I). If the state fails to meet the statutory time limits, then the trial court must discharge the defendant. R.C. 2945.73. The Ohio Supreme Court has "imposed upon the prosecution and the trial courts the mandatory duty of complying" with the speedy-trial statutes. *State v. Singer*, 50 Ohio St.2d 103, 105, 362 N.E.2d 1216 (1977). As such, the speedy-trial provisions are strictly construed against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996); *Singer* at 105, 362 N.E.2d 1216.

{¶ 86} Consequently, the role of the reviewing court is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits set forth in the Revised Code. *State v. Hart*, 7th Dist. No. 06 CO 62, 2007–Ohio–3404, at ¶ 8–9, citing *State v. High*, 143 Ohio App.3d 232, 757 N.E.2d 1176 (7th Dist.2001). Moreover, this duty is not affected by whether the state raised certain filings as tolling events. *State v. Williams*, 7th Dist. No. 07 MA 162, 2008–Ohio–1532, at ¶ 38.

{¶ 87} Upon demonstrating that the statutory time limit has expired, the defendant has established a prima facie case for violation of his speedy-trial rights, thereby warranting dismissal. *State v. Butcher*, 27 Ohio St.3d 28, 30–31, 500 N.E.2d 1368 (1986). If the defendant can make this showing, the state then has the burden to establish any exceptions that may have suspended the speedy-trial clock. *Butcher* at 31, 500 N.E.2d 1368. As such, the resolution of appellant's assigned error requires scrutinizing the record to ascertain the tolling potential of each filing event.

{¶ 88} To begin, appellant was indicted on May 20, 2010. Normally, the speedy-trial clock begins to run on the day following the date of arrest or service of the summons or indictment. R.C. 2945.71(C)(2); *State v. Catlin*, 7th Dist. No. 06BE21, 2006–Ohio–6246, ¶ 12. However, when appellant was indicted, he was already in jail for another case. In Mahoning County Common Pleas Court Case No.2009CR461, appellant had pleaded guilty to attempted drug possession in violation of R.C. 2925.11(A)(C)(1)(a) and R.C. 2923.02(A), a first-degree misdemeanor, and, on July 16, 2009, was sentenced to a thirteen-month term of community control. On April 20, 2010, he was held without bond following his stipulation to probable cause that he had violated the terms of his community control. On May 21, 2010, the day after his indictment in this case, the trial court in that case sentenced appellant to 120 days in jail for violating the terms of his community control, with credit for 37 days already served. Thus, appellant was being held in jail for the next 83 days or until August 12, 2010, for his community-control violation in that case.

{¶ 89} It is important to note that the triple-count provision applies only when the defendant is being held in jail solely on the pending charge. *State v. MacDonald*, 48 Ohio St.2d 66, 357

N.E.2d 40 (1976), paragraph one of the syllabus (construing former R.C. 2945.71(D), now (E)). Therefore, the triple-count provision does not apply when a defendant is being held in custody pursuant to other charges. *Id*. Nor does it apply when the accused is being held on a parole-or probation-violation holder. *State v. Brown*, 64 Ohio St.3d 476, 479, 597 N.E.2d 97 (1992) (parole-violation holder); *State v. Martin*, 56 Ohio St.2d 207, 211, 383 N.E.2d 585 (1978) (probation-violation holder). In appellant's case then, while the speedy-trial clock began to run on May 21, 2010, the day after he was indicted, each of the 83 days that elapsed between then and when he was being held solely on the charges in this case counted only as one day (tolling events aside). Thereafter, the triple-count provision applied as he remained in jail on this case until his trial on August 1, 2011.

{¶ 90} Appellant's speedy-trial clock was tolled early at 104 days when he filed for discovery and a motion for a bill of particulars on May 27, 2010 (applying the triple-count provision to the 7 days that elapsed between May 21, 2010, and May 27, 2010 plus the 83 days that had already accrued from May 21, 2010, until August 12, 2010).

{¶ 91} The next and major tolling event occurred on July 1, 2010, at a pretrial hearing, where the parties agreed that the first available trial date was February 7, 2011. The entry specifically states, "Speedy trial tolled until this time." It is well established that any period of delay "made or joined in by appellant" may toll the speedy-trial clock. *State v. Barbour*, 10th Dist. No. 07AP–841, 2008–Ohio–2291, at ¶ 16–18. "When the parties agree to a continuance, even if it is not on the motion of the defendant, the continuance is presumptively reasonable and there is no need to explain the reason for the continuance on the record." *State v. Freeman*, 7th Dist. No. 08 MA 81, 2009–Ohio–3052, at ¶ 50 (overruled on other grounds); *see also State v. Rupp*, 7th Dist. No. 05MA166, 2007–Ohio–1561, at ¶ 108. Additionally, it is well-settled that a defendant's speedy-trial right may be waived by defense counsel for extensions to prepare for trial, as well as conflicts in defense counsel's schedule. *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593, (1978). That waiver applies even if it is made without the defendant's consent. *State v. Stanley*, 7th Dist. No. 03 MA 42, 2004–Ohio–6801, ¶ 30, citing *McBreen*, 54 Ohio St.2d at 320. Thus, as of the day before that pretrial hearing, June 30, 2010, the speedy-trial clock remained tolled at 104 days.

{¶ 92} Meanwhile (before the scheduled trial date of February 7, 2011), appellant filed some motions which could be construed as serving as an additional basis to toll the speedy-trial clock. On August 17, 2010, appellant filed a motion to amend bond. On November 23, 2010, appellant filed a second request for a bill of particulars and second motion to amend bond.

{¶ 93} Following a motion filed by his co-defendant, Jennifer Kozic, appellant agreed to a continuance of the trial from February 7, 2011, until February 28, 2011. Due to a deterioration in the relationship between appellant and his court-appointed counsel, the court appointed appellant new counsel which necessitated a further delay. At a March 4, 2011 status conference, the parties agreed to a continuance of the trial until August 1, 2011, the date on which the trial commenced. Therefore, appellant's speedy-trial clock was tolled from July 1, 2010 until August 1, 2011, the first day of trial. Since only 104 of the 270 days of the speedy-trial clock had elapsed, appellant was brought to trial within time.

{¶ 94} Accordingly, appellant's fifth assignment of error is without merit.

*Kozic*, 2014 WL 4291627, at *15-17.

Kozic asserts that his speedy trial clock expired on January 29, 2011 (Doc. No. 19, p. 9) but does not explain how the Ohio Court of Appeals' calculation to the contrary was an unreasonable application of clearly established federal law. *See Brown*, 656 F.3d at 332. He states that his speedy trial clock was running from September to November 2010 and from December 2010 to January 2011 but ignores that counsel for all parties had agreed to a continuance during that time.[5] See Doc. No. 13-3, pp. 61-63, 65-66. Thus, Kozic's speedy trial clock was not running during those months. *See Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009) ("Because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is charged against the defendant," quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). Kozic asserts that he did not agree to a continuance in March 2011, but the record shows that a continuance was warranted (and charged to him) because the trial court had to appoint him new counsel after a breakdown in their relationship. Doc. No. 13-3, pp. 4, 7-9 (Kozic accusing his counsel of working with the prosecutor against him but stating that he did not want to fire him so that he could argue ineffective assistance of trial counsel on appeal).

In short, the undersigned finds that Kozic has not shown that the Ohio Court of Appeals' decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103. Thus, the undersigned finds that Ground 5 fails on the merits.

## G.  Grounds 6, 7, 8, and 9 are procedurally defaulted

Kozic raised Grounds 6, 7, 8 and 9 in his post-conviction petitions. Respondent argues that Kozic procedurally defaulted those grounds. Doc. No. 13, pp. 37-39. The undersigned agrees.

---

[5] To the extent Kozic asserts that his counsel did not agree to the continuance (Doc. No. 1, p. 9), the record shows otherwise. Doc. No. 13-3, pp. 65-66.

40

**Ground 6**: In Ground 6, Kozic argues that he was tried before an impartial tribunal because the trial court raised his bail without justification, failed to have a speedy trial hearing, failed to sever his case from his co-defendant, and failed to recuse himself without reason.  Doc. No. 1, p. 10.

Kozic raised Ground 6 in his petition to vacate or set aside judgment that he filed in January 2016. Doc. No. 13-1, pp. 424-426.  The trial court denied his petition as untimely pursuant to R.C. 2953.21(A)(2).  Doc. No. 13-1, p. 446.  He appealed to the Ohio Court of Appeals but his appeal was late and the court, *sua sponte*, dismissed it pursuant to Ohio App.R. 4(A).  Doc. No. 13-1, pp. 450-451. Kozic did not appeal that ruling.  Thus, Kozic procedurally defaulted his claim because the Ohio Court of Appeals enforced a procedural bar when it dismissed his late appeal pursuant to App.R. 4(A).  *See, e.g., Davis v. Gray*, 2020 WL 4004490, at *9 (N.D. Ohio Apr. 28, 2020) (appeal dismissed by the Ohio Court of Appeals because it was late pursuant to App.R. 4(A) is procedurally defaulted).  He also procedurally defaulted his claim because he did not appeal the Ohio Court of Appeals' ruling to the Ohio Supreme Court.  *Williams*, 460 F.3d at 806.

Although Kozic also raised Ground 6 in a second petition to vacate or set aside judgment filed in January 2018 (Doc. No. 13-2, pp. 327-329), the trial court dismissed that petition as untimely pursuant to R.C. 2953.21 (Doc. No. 13-2, p. 336) and the Ohio Court of Appeals affirmed (Doc. No. 13-2, p. 368). Thus, he also procedurally defaulted in that respect, too.  *See, e.g., Jones v. Bracy*, 2016 WL 11261657, at *8 (N.D. Ohio Dec. 1, 2016)[6] (the time requirements in R.C. 2953.21 are an adequate and independent state law ground for denying review of a claim in federal habeas proceedings, citing *Bird v. Hurst*, 110 Fed. App'x 474, 478 (6th Cir. Aug. 9, 2004)).

As above, Kozic has not shown prejudice or actual innocence to overcome the procedural bar. For cause, he states that his appellate counsel did not raise this issue on direct appeal.  Doc. No. 1, p. 11.

---

[6] Report and recommendation adopted, 2017 WL 3205481 (N.D. Ohio July 28, 2017).

But ineffective assistance of appellate counsel cannot serve as cause to excuse a procedural default where, as here, any ineffective assistance of appellate counsel claim is itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-453 (2000).  Kozic procedurally defaulted any ineffective assistance of appellate counsel claim because he did not file an Application for Reopening pursuant to Rule 26(B) and has not shown cause or prejudice to excuse that procedural default.  Thus, the undersigned finds that Ground 6 is procedurally defaulted.

**Ground 7**: in Ground 7, Kozic argues a Fourth Amendment violation "when the State attached a GPS tracking device to his vehicle without a Court ordered search warrant."  Doc. No. 1, p. 12.  Kozic raised this claim in his 2016 postconviction petition (Doc. No. 13-1, p. 426) and his 2018 postconviction petition (Doc. No. 13-2, p. 329), which the state courts denied as untimely, as described above.  Thus, the undersigned finds that Kozic procedurally defaulted this claim and has not shown cause, prejudice, or actual innocence to overcome the procedural bar.

**Ground 8**: in Ground 8, Kozic argues that the Mahoning County trial court lacked subject matter jurisdiction to try his case because some of the crimes he was convicted of occurred in Columbiana County, not Mahoning County.  Doc. No. 1, p. 13.  Kozic raised this claim in his 2016 postconviction petition (Doc. No. 13-1, p. 428) and his 2018 postconviction petition (Doc. No. 13-2, p. 331), which the state courts denied as untimely, as described above.  Thus, the undersigned finds that Kozic procedurally defaulted this claim and has not shown cause, prejudice, or actual innocence to overcome the procedural bar.[7]

**Ground 9**: in Ground 9, Kozic argues that he suffered a due process violation because an

---

[7] *See also State v. Jewell*, 2002-Ohio-226, 2002 WL 86855, at *3 (explaining that R.C. 2901.12(H) provides, "When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred.").

unconstitutional in-court identification procedure was used a trial.  Doc. No. 1, p. 14.  Kozic raised this claim in his 2016 postconviction petition (Doc. No. 13-1, p. 430) and his 2018 postconviction petition (Doc. No. 13-2, p. 333), which the state courts denied as untimely, as described above.  Thus, the undersigned finds that Kozic procedurally defaulted this claim and has not shown cause, prejudice, or actual innocence to overcome the procedural bar.

In sum, the undersigned finds that Grounds 6, 7, 8 and 9 are procedurally defaulted.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED in part and DENIED in part.


Date:  May 27, 2022                              *s/ Jonathan Greenberg*
                                                 Jonathan D. Greenberg
                                                 United States Magistrate Judge




## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).**